**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal Case No. AW-11-cr-0157 |
| | * | |
| NATHAN A. SILLA | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION**

The Court wishes to supplement its findings made and comments articulated with respect to the February 4, 2013 hearing and sentencing. The Court denied the Defendant's request to withdraw his guilty pleas. The Court also denied the Defendant's request for a medical examination.

By way of background, this matter came on for a scheduled two-week trial on Tuesday April 24, 2012. A jury was selected on Tuesday consisting of 12 jurors and two alternates. Opening statements were made on Tuesday afternoon. The next day (Wednesday) testimony commenced. At some point after testimony commenced, the attorney for the defendant indicated that her client was feeling dizzy (possibly from the medications he was on) and put his head down on the desk while testimony was being taken. Per the request of counsel for defendant, the Court took a break and permitted the defendant an opportunity to go back in the lock-up area and get himself together. After a rather long break and after extensive discussions, the Defendant was brought back but once again he placed his head back down on the desk. His counsel indicated at a couple points that he was sleeping and that she could hear snoring. The Court indicated that it could not hear any snoring. The Court noticed at court breaks after the jury left the room that the Defendant "popped up" and seemed to have no difficulty walking from the

defense table in the courtroom to lock-up. The Court called the Marshal and inquired whether they had observed anything unusual about the Defendant.  The Marshal reported that the Defendant appeared to be fine during the morning ride to court and that Defendant seemed "fine" while in the downstairs lock-up area. Without seeing any demonstrative or other physical observations that Defendant was feeling dizzy beyond Defendant's statement through his attorney, the Court took additional testimony while the Defendant kept his head down on the desk.  After lunch, the Defendant's attorney advised the Court that the Defendant wanted to enter a guilty plea.  (A plea had previously been offered to Defendant and his counsel).  The Court allowed the parties to negotiate.  The Defendant and his attorney were brought to the U.S. Attorneys' Office.  After a period of negotiations, all parties advised the Court that they had reached a plea agreement.  As a cautionary measure, the Court suggested that the plea be taken the next day in order that the Defendant's claimed dizziness could be checked out.  The Court then adjourned for the afternoon and sent the jury home early.   The medical staff at CTF in the District of Columbia examined the Defendant regarding him falling asleep in court.  The medical staff found nothing problematical for the Court to address.  The Court requested that the Marshal document his observations.  The Marshal provided a conformational note from CTA which was provided to on Thursday the 26th of April).

     Thursday morning the Court scheduled the Rule 11 proceedings in order to take the guilty plea. The Marshal observed the Defendant upon his arrival to Greenbelt, and reported that the Defendant seemed to be fine.  The Rule 11 proceeding was rather long and the Court carefully followed up some of Defendant's responses which the Court believed were somewhat coy and were, possibly, designed to preserve something later for later direct appeal or for a § 2255 collateral attack.  At one point, Defendant said in response to my question that *at this time* he had

no complaints about his attorney. When the Court pressed him more with respect to his vague responses, Defendant particularized the concerns he had about what his attorney had not done. Most of his concerns related to his disappointment in the plea negotiations and in his attorney not having [before that today] nailed down the areas and issues of dispute he wanted to challenge at the sentencing. At one point during the Rule 11 proceedings, the Defendant attempted to say that he was pleading guilty to not waste the Court's time. The Court, unequivocally, indicated that it would not accept the plea on that ground and only when the parties continued to negotiate and agree on what contested issues remained did the Court continue with the Rule 11 colloquy.

Subsequently, the Defendant indicated that he was pleading guilty because he accepted the facts, was guilty and that his guilty plea was not based upon any dissatisfaction with his attorney. The Court also determined and mentioned that Defendant had obtained by way of further negotiations and additional concessions by the Government (even during the plea colloquy) those things that disappointed him because his attorney had not negotiated them before this point. It was very clear from the transcript that there was no prejudice sustained by Defendant because of the concerns or disappointments he expressed about his attorney's failure to get a better deal. In fact, the Defendant was able to negotiate a plea agreement with several contested issues (to be resolved) which, the Government indicated was more than the Government usually gives up as part of their plea agreements under similar circumstances.

The plea agreement was executed and encompassed all of the contested issues the Defendant expressed. It was also made clear to Defendant that pursuant to the plea agreement, (1) the Government was not limited to the restitution amount set forth in the agreement but the Government reserved the right to seek more if they had additional evidence to present, and (2) that Defendant, was not a citizen and would likely be deported. At the end of the day, the Court

determined that the Defendant was alert, conversant, and had directly participated in the plea negotiations. The Court further determined that Defendant had made a knowing, voluntary, understanding decision to plead guilty and there was an adequate factual basis to support his plea (all of which he agreed with w/o any dispute or comment). It was clear to the Court that Defendant was quite aware of how compelling the victim's testimony appeared to have had on the jury, was aware of the video evidence capturing him opening accounts, and was aware of the strength of the Government's case. It appeared abundantly clear to the Court that the Defendant decided to end his request for a trial in order to minimize the risks associated with going to trial and being convicted.

With respect to Defendant's motion to withdraw the guilty plea, the Court considered the pleadings and has considered the *United States v Moore* (931 F.2d 245, 248 (4th Cir.1991) factors. The Court thoroughly reviewed the transcript and clearly finds that the Defendant was alert, quite verbose, conversant, cognizant and aggressive in terms of his input in negotiating and revising the terms of the plea agreement. The entire colloquy did not raise anything in the Court's mind to suggest that the Defendant did not enter a knowing, voluntary and understanding plea. Beyond his statement that he is innocent, the Defendant has presented nothing consistent with innocence nor has he in any way contested or presented anything inconsistent with the mound of evidence presented in the brief trial and the proffer made with respect to the additional evidence to be presented had Defendant continued with the trial. The Court determined that the Defendant had close assistance with an experienced attorney who was participating in the trial and who assisted the Defendant in negotiating a plea agreement which Defendant ultimately accepted. It would, indeed, be some prejudice and inconvenience sustained by the Government should the Court grant the motion to withdraw the guilty plea and require the Government to

prepare for trial.  In sum, the Court finds that the Defendant has not met his burden for withdrawal of his guilty plea.

The Court also reviewed the Defendant's hand request (Document 192) and his counsel's Motion for a mental evaluation (Document 208).   The Court finds that on the record before it, there was not nor is there at present a sufficient basis to have ordered or to have conducted a competency hearing or otherwise order a mental evaluation. Beyond Defendant's self-serving claim that he was not cognizant on the day he accepted the plea agreement of what was going on because he had not been given his prescriptions, there is nothing presented to support his claim. The record, including the transcript of the Rule 11 proceeding, quite frankly, belies such a claim. For these reasons and for the reasons articulated at the sentencing hearing on February 4, 2013, the Court denies the motion to withdraw the guilty plea and also denies the request for a medical examination.

Finally, for the reasons set forth at the sentencing, the Court also determined that the loss amount (the intended amount) exceeded $1,000,000.00 (One  Million Dollars); that the Defendant was the driving force, the main player and clearly a manager or leader of this conspiracy, and that the Defendant obstructed justice by:  Advising his girlfriend (who testified at the sentencing hearing) to tell a friend of the Defendant " to clean things from his computer and that the friend would know what to do";  [and  by] requesting his girlfriend to lie about a $7,000 check which Defendant had fraudulently placed in her bank account.  The Court determined that the final adjusted offense level was a 30 and a criminal history category of I. Following the assessment of the §3553 factors, the Court determined that a 120 months sentence as to counts 1, 7, and 12 was appropriate to be followed by a mandatory consecutive 24 months

on count 15. The total sentence of incarceration amounted to 144 months with credit for time served.

      This Memorandum Opinion shall be made a part of the judgment entered.

<u>February 6, 2013</u>                                      <u>          /s/          </u>
Date                                                   Alexander Williams, Jr.